Good morning. May it please the Court, my name is Peggy Sue Juergens and I represent the appellants of Fofana in this appeal. And the facts are in my brief, so I'm going to go directly to my argument this morning. It's Mr. Fofana's position that the district court erred by failing to allow him to withdraw his guilty plea here. And as I cited in the Davis case, the standard here is whether he presents any fair and reasonable reason for allowing him to withdraw his guilty plea, and that this should be liberally construed by the district court, which we believe it was not here. This fair and just reason for withdrawal of a guilty plea can be any reason that comes up after the guilty plea is actually entered. And that's the case that we have here. It's also the case in the Davis case. Well, here he didn't misunderstand anything that is directly related to his criminal case, which was true in Davis. The actual sentence to be imposed for the very crime involved was the problem in Davis. And here it's really a collateral question. That is, a different branch of the government dealing with him on a different basis. So why is that? I'm just trying to address that, because, Your Honor, I actually respectfully disagree with that analysis brought up by the government, that it's actually about the sentence, which is a supervised release. Mr. Folfana here is not claiming that anything negative was going to happen in his immigration status as a result of his guilty plea. The cases cited by the government here, in their brief, deal with the saying that if I enter a guilty plea, then I'm going to be deported, and that would be a collateral consequence, was the deportation. Here, there isn't anything different that immigration was going to do to Mr. Folfana as a result of his guilty plea. It's about his misapprehending the term of his sentence, which was about what does supervised release mean. But his misapprehension related to a collateral consequence that would occur as a matter of that would or wouldn't occur, not that somebody else would impose it. It just was a fact. Your Honor, it was a fact, but it wasn't a fact about the immigration piece of it. It was a fact about how he understood what supervised release meant when he entered into it, was what was he thinking. He was thinking, and there's evidence in the record to show But we've got two proceedings, his immigration appeal, right, and his criminal case. Correct, Your Honor. So he thought, the reason he wants to withdraw his plea, if I get this right, is because he's saying he thought supervised release would somehow spring him from this other situation, correct? That it would make him out of federal law. Well, he was thinking, Your Honor, the way he was thinking is that the supervised release, his definition of it was a lure. It was a reason for entering into the guilty plea. It was his understanding about what supervised release is. It was an inducement to enter into his guilty plea, which I think is similar to the Davis case. I don't understand. Let's understand what he thinks. I mean, his whole construct of why he wants to withdraw it relates to his immigration appeal, does it not? Well, his con see if I understand what your question is. His construct about why he wants to withdraw his plea is that he thought that supervised release would allow him not to be in immigration custody. Well, here's what I don't understand about it. Let's say that he had received a sentence of 12 days and no supervised release. He still wouldn't be out of custody in the immigration context. Right. You're exactly right about that. So I don't understand how it's even, that's why it seems collateral to me, because the supervised release piece doesn't have anything to do with his being in custody right now. You're correct about that. And as I understand it from my client's point of view, and we've gone over sort of where we are procedurally in all of this with him, and he persists in wanting to say that base, and it was, he said it, I mean, it's his position was that his reason was that it's something different, it was an inducement, is a reason why he entered into the guilty plea in the first place. And I think what's hard to... But he couldn't have gotten a better sentence. I guess that's what, I just don't, I don't see where there's any harm. You're correct about that. And it's about his, he wants to withdraw his guilty plea, and this is the reasons why. Right, but if we're in that situation, and we say that that's a legitimate reason because he wasn't advised, I mean, you're saying, well, there's, he's misunderstanding. Correct. Because he's misunderstanding what the term supervised release means. Well, doesn't that really through the back door say now district judges are going to have to say, well, supervised release means this, but since you have an immigration case or 22 other cases in 12 other States, I just want to advise you that supervised release doesn't let you off the hook. I mean, that's essentially what he's saying, is that he wasn't really advised of what the extent of supervised release was. That he didn't understand the legal term is what he's saying. Right. Yeah. Counsel, let me ask, what's his current immigration status? His current status, as best as I understand it, having talked with him and looked at the waiting to be deported to Gambia. His, he, the deportation order is in place, and Gambia will not accept him because of whatever happens between our two countries. So he's in that position, which actually was referred to in the affidavit by the immigration attorney, which is where supervised release usually comes into effect in an immigration sense. So actually all of his immigration proceedings are complete, except they haven't been able to deport him because Gambia doesn't want him. Is that right? That's correct. That's correct. And with one addition, there's, there is a civil case in the Ninth Circuit, a 2241. It is pending. But in terms of the deportation part, you're correct, Your Honor. And if the court doesn't have any more questions, I would submit the brief and request that the court vacate the judgment and allow my client to withdraw his guilty plea. Thank you. Thank you, counsel. We'll hear from Ms. Brunner. Good morning. May it please the court, my name is Helen Brunner. I'm here representing the United States. Before I get to my argument, let me respond to Judge Fletcher's question. I would confirm what Ms. Juergens just said. As I understand it, and I did check this morning, Mr. Profanus' immigration status is such that his final, his order of removal is now final. He, contrary to the suggestion in a footnote at page 3 of our brief, he did not appeal the matter to this Court. He did not file a petition for review, and the Board of Immigration Appeals order was issued on January 9th, 2006. So that is final. He does have an appeal to this Court from a district court habeas 2241 proceeding. That case is still pending. But briefs have been filed. This isn't really been part of this case, but what's the government's position now? Are they people who cannot be deported to their own country? Are they releasing them on bond, or what are they doing? I don't know the answer to that question, Judge Fletcher. I do know he is still detained, and when I checked this morning early, the individual that I spoke with said they are awaiting travel documents to Gambia. So I cannot confirm one way or the other whether or not he could be deported to Gambia. Ms. Winston probably knows, but we're not going to ask her as to what the government's policy is. But in any event, if I could just make a couple of very quick points with respect to the argument here, it is a collateral matter. And quite frankly, I'm a bit perplexed by how he comes to this argument as a basis for withdrawing his plea and why he could even misapprehend it, because the plea agreement itself, very simply, there were two main parts to this that relate to this appeal. That is to say, the government agreed that it would recommend a sentence. And that's in ER 25. The government agreed that it would recommend to the sentencing court that the appropriate period of confinement should be credit for time served in immigration custody. Well, that doesn't presume any release. And then the section, page ER 24, that talks about supervised release and that defines the term in the plea agreement, says if supervised release is imposed as part of sentence, then there would be conditions of supervision, and it informs him that if he violated those conditions, if he were so released, that he might face further imprisonment. So that sort of begs the question of how you believe that's going to release you from immigration custody, coupled with the fact that in the hearing on his motion to withdraw, when he was asked multiple questions, and I believe that is at ER 100, about his conversations with counsel and their review of the plea agreement prior to entry of the plea, he makes very clear that he never asked his counsel. His counsel never told him this was going to be the result and that he never asked her, and rather that it was just his conclusion based on what we do not know. But taking all of that together, I don't think, with this being a collateral consequence, that it shows a fair and just reason to withdraw his guilty plea. And for that reason, we would ask the Court to affirm the district court. If the Court has no other questions for me. I don't believe that we do. Ms. Jergens, did you have any rebuttal? Thank you, counsel. The case just argued is submitted. And we will move to Charter Oak Fire Insurance Company versus JP and WJ.
judges: B. Fletcher, Graber, McKeown